**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**                        **CRIM ACTION NO. 2:25-CR-18
                                       (KLEEH)**

**CHARLES ROBERT CALHOUN,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[ECF NO. 43], DENYING MOTION TO SUPPRESS [ECF NO. 28], AND
OVERRULING OBJECTIONS [ECF NO. 52]**

Pending before the Court is Defendant Charles Robert Calhoun's *Motion to Suppress Physical Evidence* [ECF No. 28] and the *Report and Recommendation, Recommending that Defendant's Motion [ECF No. 28] to Suppress Evidence Be Denied* [ECF No. 43]. Defendant Calhoun filed an objection to the Report and Recommendation ("R&R"). ECF No. 52. For the reasons discussed herein, the R&R is **ADOPTED**, the motion to suppress is **DENIED**, and the objection is **OVERRULED**.

## I.    PROCEDURAL HISTORY

Defendant filed his *Motion to Suppress Physical Evidence* [ECF No. 28] on September 23, 2025, seeking to suppress the introduction of methamphetamine and a pistol that he believed were seized in violation of his Fourth Amendment rights. This Court referred the suppression motion to Magistrate Judge Aloi. ECF No. 29. The

Government filed its *Objection to Motion to Suppress* [ECF No. 31] on September 25, 2025. Judge Aloi convened for a motion's hearing on October 1, 2025, and heard sworn testimony from Trooper James Peteete ("Peteete"), of the West Virginia State Police ("WVSP"); Corporal Damon Brock ("Brock") of the WVSP; Cassey Beverage ("Beverage"); and Sergeant Joshua Tallman ("Tallman") of the WVSP. Several exhibits were also admitted into evidence including body cam footage and a copy of the stopped vehicle's replacement registration. See ECF No. 43.

Following the hearing, the Government moved for leave to file a supplemental objection to Calhoun's motion to suppress and to schedule a hearing for the Government to present rebuttal evidence. ECF No. 35. Judge Aloi granted the Government's motion, and the Government accordingly filed its supplemental opposition briefing. ECF Nos. 36, 38. The second evidentiary hearing occurred on October 28, 2025. ECF No. 41. Brock and Tallman testified for a second time. Additionally, Judge Aloi admitted evidence regarding communications with 911 dispatch during the traffic stop and additional DMV records for the stopped vehicle. ECF No. 43.

On November 4, 2025, Judge Aloi entered his *Report and Recommendation, Recommending that Defendant's Motion [ECF No. 28] to Suppress Evidence Be Denied* [ECF No. 43]. Defendant sought additional time to file objections to the R&R, which the Court

granted, and Defendant filed his *Objection to Report and Recommendation* [ECF No. 52].

## II.   RELEVANT FACTUAL BACKGROUND

The Court only recites the facts relevant to Defendant's objection. On July 23, 2024, Defendant was subject to a traffic stop, conducted by Troopers Brock and Peteete. While speaking to Journey Robinson in the front passenger seat, Peteete testified that he smelled marijuana emitting from the vehicle. Peteete stated he was familiar with the odor based upon his training and experience conducting traffic stops and working with a K-9. Peteete informed the vehicle passengers and Brock that he believed he smelled marijuana. When asked if she possessed marijuana, Robinson told Peteete that she did not smoke marijuana very much but did use it occasionally.

Peteete's K-9 partner, Sebes, was on site during the traffic stop. During the stop, Peteete retrieved the K-9 and took him around a sweep of Defendant's vehicle. Sebes alerted twice for drugs on the rear passenger door. Thereafter, the officers conducted a search of the vehicle. During the traffic stop, none of the vehicle passengers admitted to consuming marijuana, but Robinson hypothesized that the marijuana smell could have come from her home. Brock reasoned to Robinson that the odor could be on her clothes. Additionally, burned foil was found in Robinson's possession. She remarked during the traffic stop that the foil

3

could have smelled like weed. Peteete testified that he knew from his training and experience that tin foil could be used to smoke or consume drugs. The officers recovered methamphetamine, a pistol, plastic baggies, and approximately $3,600 from the vehicle. No marijuana was found in the vehicle.

### III.  **STANDARD OF REVIEW**

When reviewing a magistrate judge's R&R, the Court must review de novo only the portions to which an objection has been timely made. 28 U.S.C. § 636(b)(1)(C). Otherwise, "the Court may adopt, without explanation, any of the magistrate judge's recommendations" to which there are no objections. Dellarcirprete v. Gutierrez, 479 F. Supp. 2d 600, 603–04 (N.D.W. Va. 2007) (citing Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983)). Courts will uphold portions of a recommendation to which no objection has been made unless they are clearly erroneous.  See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

### IV.  **DISCUSSION**

Defendant objects to the magistrate judge's finding that WVSP officers Peteete and Brock had probable cause to search the vehicle based on the odor of marijuana. ECF No. 52. Defendant disputes the finding of fact that Peteete detected the odor of marijuana and argues Peteete's claim regarding the marijuana odor is not credible. Id. Defendant thus contends that without the claimed odor, there would not have been a basis to extend the vehicle stop

4

for a dog sniff and would not have had probable cause to search the vehicle. Id.

Defendant does not challenge the validity of the initial traffic stop or that the K-9's positive identification on the car would create probable cause. Rather, Defendant's objection focuses on the credibility of Peteete's claim that he smelled marijuana and that basis to continue detaining the car to conduct a K-9 sniff.[1]

A. **Applicable Law**

The Fourth Amendment to the United States Constitution provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Supreme Court of the United States has further held that warrantless seizures are "per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well

---

[1] Because a canine sniff is aimed at "detecting evidence of ordinary criminal wrongdoing" it is not an ordinary incident of a traffic stop. Rodriguez v. United States, 575 U.S. 348, 355 (2015).  Law enforcement may detain a vehicle while awaiting a drug dog's arrival and sniff, but the detention must be reasonable, with officers using "diligence in pursuing their investigation" and minimizing intrusion upon the suspect. United States v. McBride, 676 F.3d 385, 395 (4th Cir. 2012). When a trained dog "alerts" to the presence of narcotics, this constitutes probable cause to search the vehicle.  Illinois v. Caballes, 543 U.S. 405, 409-10 (2005).

delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). One such exception is the investigative stop, which is also referred to as a Terry stop. Terry v. Ohio, 392 U.S. 1 (1968). A Terry stop has been held to be constitutional when the officer's action is supported by an articulable, reasonable suspicion that the person seized had engaged in criminal activity. United States v. Sokolov, 490 U.S. 1, 7 (1989). A brief detention for investigative purposes is reasonable if an officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." Terry, 392 U.S. at 30; see also Turmon v. Jordan, 405 F.3d 202, 205 (4th Cir. 2005).

Reasonable suspicion "defies precise definition." United States v. McCoy, 513 F.3d 405, 411 (4th Cir. 2008). To determine whether reasonable suspicion exists, courts consider "the 'totality of the circumstances' to determine if the officer had a 'particularized and objective basis' for believing that the detained suspect might be armed and dangerous." United States v. George, 732 F.3d 296, 299 (4th Cir. 2013), cert. denied, 134 S.Ct. 1530 (2014) (citations omitted). Multiple factors may together "create a reasonable suspicion even where each factor, taken alone, would be insufficient." Id. at 300 (citing United States v. Branch, 537 F.3d 328, 339 (4th Cir. 2008)).

The Supreme Court of the United States has "counseled lower courts to give 'due weight' to the factual inferences drawn by police officers as they investigate crime." Id. (citing United States v. Arvizu, 534 U.S. 266, 273 (2002)). An officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981). Furthermore, an officer can extend a traffic stop to investigate a crime completely unrelated to the event that provided the justification for the stop in the first place. United States v. Digiovanni, 650 F.3d 498, 511 (4th Cir. 2011). But a prolonged traffic stop requires "a 'reasonable suspicion' that illegal activity is afoot." Branch, 537 F.3d at 336 (citing Florida v. Royer, 460 U.S. 491, 500 (1983)).

As summarized by the Fourth Circuit:

> If a police officer observes a traffic violation, he is justified in stopping the vehicle for long enough to issue the driver a citation and determine that the driver is entitled to operate his vehicle. The driver's consent or reasonable suspicion of a crime is necessary to extend a traffic stop for investigatory purposes. In order to demonstrate reasonable suspicion, a police officer must offer "specific and articulable facts" that demonstrate at least "a minimal level of objective justification" for the belief that criminal activity is afoot. Judicial review of the evidence offered to demonstrate reasonable suspicion must be commonsensical, focused on the evidence as a whole, and cognizant of both context and the particular experience of

>officers charged with the ongoing tasks of law enforcement.

Branch, 537 F.3d at 337 (citations omitted).  A search or seizure in violation of these principles triggers the "exclusionary rule," which "forbids the use of improperly obtained evidence at trial." Herring v. United States, 555 U.S. 135, 139 (2009).

### 1. Credibility Determinations

Defendant contends that Peteete's claim that he smelled marijuana in the car was not credible, and thus, Defendant objects to the magistrate judge's reliance on Peteete's testimony. Defendant asks this Court to make its own determination as to whether Peteete detected the odor of marijuana. ECF No. 52.

"Where a party objects to a magistrate judge's credibility determinations, the district court must conduct a de novo determination on credibility, but the court need not 'rehear the contested testimony in order to carry out the statutory command to make the required "determination"' under § 636." United States v. Michaels, 2019 WL 6974756, at *3 (N.D.W. Va. Dec. 20, 2019) (quoting United States v. Raddatz, 447 U.S. 667, 674 (1980)). "A magistrate judge's credibility determinations based on live testimony are entitled to deference where they are supported by the record as a whole." United States v. Boatrite, 165 F. Supp. 3d 484, 489–90 (N.D.W. Va. 2016). "[T]he district court may consider the record developed by the Magistrate Judge to make a de novo

determination on the credibility of witnesses." United States v. Perry, 2019 WL 2189514, at *2 (E.D. Va. May 21, 2019), aff'd, 92 F.4th 500 (4th Cir. 2024).

In the R&R, the magistrate judge accepted testimony from Peteete that he told Brock about smelling marijuana. The magistrate judge believed this testimony because it was bolstered by evidence that Robinson told Peteete that she smoked marijuana occasionally and that she stated a material on foil in the vehicle could smell like marijuana. ECF No. 43 at pp. 28-29. Robinson further told Brock that if there was marijuana at issue, it would be at her home and not in the car. Brock told her that the smell could be coming from her clothes, and she did not dispute this hypothesis. Id. Thus, Judge Aloi concluded that the evidence presented supported finding that Peteete smelled marijuana and that the officers had probable cause. Id.

In his objection, Calhoun argues that the evidence the magistrate judge used to bolster Peteete's testimony was speculation and conjecture. ECF No. 52. Accordingly, Defendant asks this Court to reject the R&R and suppress the evidence seized on July 23, 2024. Id.

After a thorough de novo review of the entire record, including the audio recordings of the evidentiary hearings, the Court finds Judge Aloi's credibility determination is supported by the record. Defendant contends the record does not support Judge

Aloi's credibility determination for Peteete because Brock did not also smell marijuana and no marijuana was found in the car. Based on the entirety of the record, this objection is without merit.

The evidence shows that Peteete is trained to detect the smell of marijuana and has been conducting traffic stops since 2012. While Brock did not personally smell marijuana on Robinson, Peteete told him that he smelled the substance and Brock observed Peteete questioning the vehicle passengers about marijuana. Furthermore, Robinson did not deny that she smelled like marijuana. Rather, she provided possible explanations for the odor, including stating that she could have weed at home and smoked from time to time. Robison furthermore did not challenge Brock's hypothesis that the odor could be coming from her clothes.

This Court takes a deferential standard regarding the credibility determinations made by Judge Aloi because he sat as the trier of fact. The Court agrees with the Magistrate Judge's findings of witness credibility regarding the officers' testimony and finds that Brock's testimony does not discredit Peteete's testimony. Brock did not disagree that Peteete smelled marijuana; rather, Brock personally did not smell it. The Court is not persuaded to overrule the Magistrate Judge's determination regarding Peteete's credibility when Robinson admitted to smoking weed occasionally and did not deny the presence of the odor. Furthermore, during the search, Robinson hypothesized that the

discovered burned tin foil could have been the source of the odor. The record as a whole does not support the Court's rejection of the R&R or a finding that Peteete outright lied about smelling marijuana.

Rather, Peteete's claim that he smelled marijuana is bolstered by the fact that he waited to search the vehicle until completing the K-9 sniff. It is well-established that the smell of marijuana emitting from a vehicle creates probable cause to search the vehicle. See United States v. Lewis, 606 F.3d 193, 198 (4th Cir. 2010). Where probable cause exists to search the vehicle based on the smell of marijuana, the Fourth Amendment permits a warrantless search of "any containers or compartments found within it." United States v. Lesane, 361 F. App'x 537, 539 (4th Cir. 2010). Thus, the officers had authority for the search at that time. However, Peteete corroborated his suspicion by conducting a K-9 sniff, with a K-9 already on the scene. The K-9's positive indication for drugs on the vehicle supported Peteete's belief that he smelled marijuana. Even more, the mere fact that Peteete sought confirmation supports he sincerely believed he smelled marijuana, as the K-9's sniff could have disputed his belief. Thus, the record as a whole supports the magistrate judge's credibility determinations, and this Court will afford them appropriate weight.

11

### V.    CONCLUSION

For the foregoing reasons, the R&R [ECF No. 43] is **ADOPTED**, the motion to suppress [ECF No. 28] is **DENIED**, and the objection is **OVERRULED** [ECF No. 52].

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: April 15, 2026

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA